May it please the court, I'm Robert Katz of the District of Columbia and Ohio Bars. As the court has read the record and is familiar with the facts and the arguments, I want to note that ironically today marks the 11th anniversary of the Sixth Circuit's decision, Katz v. Chalker, 1998, which Chief Judge Danny Boggs, writing for the court, expressly held as the law of the case that plaintiff's allegations have taken as true the judge's regarded as legal knowledge. This case was filed in 1995, gives a new meaning to the expression that justice delayed is just denied in a proceeding that has continued for more than 15 years in which no answer or response of pleading has ever been filed by the defendants, which must in itself be some kind of record, any without a single day of discovery. So the entire record that's been developed in this case has been developed in terms of documentary evidence that's been in the public domain. The points I want to cover, because we only have 15 minutes, is just to note that the District Court's dismissal of this action following its transfer from the Middle District of Tennessee back in 2003, the dismissal lack of state action has just frankly manifested legal error, the reason being is that when a court acts, it acts under color of law. This is an interim challenge to a decree of a judge based on procedural and due process irregularities and fraud upon the court. It's simply a common law bill of equity as this circuit is recognized and the Supreme Court has recognized long before Rooker became part of Rooker-Feldman. The Arizona Divorce Court is a legal nullity, and it's a legal nullity because frankly the record is uncontested and uncontroverted. The events that we outline, shocking procedural irregularities that occurred in that Arizona court were irregularities, for example, in which my children, which I represent here today as myself, were never served with process, yet their assets were taken from them. This action was brought under a federal question jurisdiction and the remedies there, Katz v. Chalker, is the law of the case. The District Court's dismissal is just legal error. We've got Stumpf v. Smart, and courts act under color of law, and it's surprising that a judicial officer below would make such a ruling when in fact the acts that he or she takes are in and of themselves governmental action. Finally, the evidentiary record developed below is uncontroverted. What happened here is they filed a motion to dismiss, and we filed a motion for some, a press motion for some re-judgment, and they, of course, we had just put out a comprehensive statement of material issues as required by the federal civil procedure and local rule, and, of course, they never controverted anything. They filed what they called, you know, when they were just general denials, and again, never doing any issues. Frankly, and then again, we're up here on a preliminary injunction, Your Honor, and there's a trial transcript. Where's the motion? What motion for preliminary injunction was filed with the District Court in Arizona? It wasn't. The record was transferred, and I requested that the court rule on the motion for preliminary injunction in conjunction with the motion for partial summary judgment. I mean, we were waiting for a decision on the decisional, but the court was requested to render that ruling, and it's in the motion for summary judgment as a form of relief, and, you know, basically renewed all the arguments. So the court had it, and so you now have a record of whether there was an abuse of discretion. Obviously, if the court affirms the dismissal for want of state action, we don't even need to reach that. Turning again quickly, and I wish to devote two or three minutes of rebuttal, but turning now to, so we're asking this court to essentially void the record because the summary judgment was properly filed in the form, and there's no material issues. It's a fact. I mean, I've got the most incredible record, trial transcript, the three-day preliminary hearing, all of it annotated to the record, nothing from the other side. Turning to the attorney's fees award, well, the first thing I need to note is that the court does have jurisdiction in the attorney's fees award under 1291. We filed a Rule 60A motion under 1993 amendments, and Rule 60A is treated with the same suspension as Rule 59. Obviously, if this court chooses to reverse, the attorney's fees award is moot because the case obviously is not frivolous. So I will reserve the balance of my time. Counsel, this is Jessica Nelson speaking. I have a question about your first amended complaint for equitable relief against Susan Schalker. I know there's been some confusion about what you term your equitable due process claim. I notice you cite Kougasian, the K-O-U-G-A-S-I-A-N, repeatedly in your brief. In Kougasian, the plaintiff sought to set aside a judgment for extrinsic fraud. Is that how you would characterize your claim? Well, we do have claims for extrinsic fraud for things we discovered off the record years later. For example, the judge signing the case was the attorney's, or Schalker's attorney's, former law partner. But essentially, it's gross procedural irregularities. You can string cite the cases in the brief. This is Donalds v. Hutton. This is essentially asking the federal court to sit as a court of chancery and setting this, you know, for example, my two cats, Jason and Sean, cats were never served with legal process. They took their separate assets, they were adults, away from them without ever acquiring personal jurisdiction over them or the assets. So the point is the basic process here is due process. In the Sixth Circuit, the law of the Circuit of the Sixth case, the Sixth Circuit has held that if these facts are true, the judgment's void. And we're asking that court now to hold that it's void simply because the record's uncontroverted that it's void. There is nothing that they can cite to. There are only arguments in their brief. These plaintiffs were litigious, litigious. We have yet to have a hearing on whether that judgment is void. But we don't need to now because the Sixth Circuit set the benchmark, and we've been transferred here. But the law of the case holds, and you have the record to decide whether the facts are uncontroverted. They can't just simply file denials, general denials, like they're answering a complaint. They have to be specific about it, and this court has so held many times. So this is simply a merry old England Chancery Court bill of equities. If the law court in England didn't serve some process, server didn't serve, and then the person wakes up two years later and is being sent off to debtor's prison, this is his equity. So the bill of equities is historically well-rooted in American law. It's all in the briefs. So, again, I request a modest amount of time to respond to my opposing counsel's arguments. Judge Nelson, do you have a further question? Not at this time, thank you. Then we'll reserve the balance of the time, which is about six and a half minutes for rebuttal, and invite counsel for appellees to proceed. May it please the Court, my name is Don Wilson, and I represent the estate of Susan Chalker and her former attorneys, Annette Everlove and Leonard Karp. Our starting point this morning must be the Sixth Circuit opinion about the only thing my opponent and I agree upon is that it is the law of the case. Charitably speaking, the Northern District of Tennessee put a bullet in plaintiff's case. The Sixth Circuit resurrected a little sliver of that case when it said to the plaintiffs, your only claim to survive is your contention that the actions of the Pima County Superior Court were in contravention of your due process rights, your Fourteenth Amendment rights, actions committed or discovered after a particular deed. If we accept that proposition, some claims fall on one side of the line, some claims fall on the other. That's right. You've got a complete dismissal, so the district court determined there was nothing on the survival side of the line. How come? I think that the court decided there was nothing on the survival side of the line for these defendants. What it said was, you have the right to bring a separate claim, that word separate was used, for the actions of the Pima County Superior Court. Importantly, it didn't say for the actions of the Pima County Superior Court and the Chalker defendants or the Chalker lawyers. They're glaringly omitted from what the Sixth Circuit said. And for these plaintiffs to now come to you and say, but we're entitled to bring... But wait a minute. Given what the subject matter, given what the lineup of parties in the Pima County action was, are you saying they can always sue Pima County? I mean, the other parties, the real parties in interest in the underlying divorce action were one of your clients, Ms. Chalker, now her estate. Right. The lawyers, there may be a pretty good argument for saying they don't belong in the case anymore, but I can't figure out why the case, based on the due process violation from the purportedly improper disposal of the Arizona divorce action, doesn't leave Ms. Chalker's estate still in the case. But Ms. Chalker's estate isn't accused of having committed any due process violations. It is only the Pima County Superior Court. But the point is that the Pima County action should be set aside. That would restore the parties to that case. That includes Ms. Chalker. It was a divorce action. I agree with that observation. That is what might happen if there is a petition for modification of the decree or there is some due process challenge to the decree and through the clerk's office there is an action and it's set aside. I agree that the possibility exists that Mr. Katz and the Chalker estate might have to relitigate the division of assets and liabilities from the divorce. I acknowledge that as a possibility. Wouldn't that make the estate a real party of interest for the current action? It would. Well, then that seems to explain why the estate should be a party to this action. I don't disagree with that. You obtained a dismissal for the estate. If you agree now that the estate should be a party to the action which is allowed to proceed under the Sixth Circuit's decision, then it seems to me you're acknowledging that there was error by the district court in dismissing that one of your clients, now the estate, from the action. No, I don't acknowledge that. What the plaintiffs here are seeking is not just to have that decree set aside. They're seeking to have it nullified and declared as void. That issue has been litigated and lost. How has that been litigated and lost? I took that to be what the Sixth Circuit said could survive. The Sixth Circuit said that the validity of the 1989 Ohio divorce action is gone. The claim that the Pima County violated full faith and credit is gone. But the validity of the Pima County judgment being void because of the alleged improprieties is not gone. Based upon actions of the Pima County Superior Court clerk only. A clerk, judge, whomever, the public officials in alleged connivance or suggested connivance with the attorneys and so forth, whatever the misconduct was supposed to have been, what's under attack is the validity of that judgment, whether it should be recognized and honored. If it's not honored, then the estate is very much back in the ballgame. And that makes the estate a real party of interest. If that is true, then the Sixth Circuit made a mistake when it said the only thing with potential vitality is a separate subsequent claim involving the actions of the Pima County Superior Court. I think we're talking about the same claim. I don't understand how the estate's not a party to that claim. Frankly, I can't figure out why the state wouldn't object to him being able to proceed on that claim without the estate. Because the estate's the one that's going to get affected. Well, the estate will have to be a real party of interest. The estate will have to be heard if, in fact, there is a challenge to a decree with a petition for modification of the decree or some other form. That's exactly what this case is, only it's not in front of Pima County Superior Court. It's in front of the federal court. And it shouldn't be. And it's also not framed in the manner that you're suggesting. There are separate tort claims which have been brought against Chalker and Chalker's lawyers which have already been litigated and lost by these same plaintiffs. And they shouldn't be in this case. I'll accept that proposition. As it happens, I agree with it. We've got a Christmas tree here, and a lot of the ornaments need to be taken off. But that doesn't mean the whole tree is bare. The Sixth Circuit said that something survives. And I can't figure out why the survival piece isn't still around. What basis did the district court have to dismiss the complaint in its entirety? Because what the district court, on remand to the district court, Judge Zapata ordered these plaintiffs to replete their complaint, to streamline it so it contained the allegations remaining, whatever comported with the Sixth Circuit opinion, as you might have described. They didn't do that. That's what Judge Zapata found. And based upon other derelictions, he concluded it was appropriate to dismiss the complaint. Well, there may be grounds, and certainly any case with this kind of history suggests lots of grounds for disposal perhaps on sanctions grounds. But I don't see in the district court's order an adjudication of that nature. I don't see him saying, look, I told you to cut it back to what's left. You didn't. As a sanction, I'm dismissing all the claims, including the ones that you could have kept alive. You're right. That observation is correct, Your Honor. The displeasure voiced by Judge Zapata is not in that order. It's in the order where after the joint status conference, when the disbarred lawyer showed up and he expressed his pleasure in that. The transcript made it very clear, and I understand his frustration at what he was handed as a gift from Tennessee, a nice package to unwrap. But that brings us back to the piece that the Sixth Circuit identified as surviving. What grounds are there, separate and apart from the possibility of dismissal as a sanction, which the court didn't do, what substantive grounds are there for saying that piece has gone away? Because it wasn't properly pled by these plaintiffs as they were ordered to do by the Sixth Circuit and Judge Zapata. What they did was they re-litigated and re-urged everything that they had already litigated and lost. They doggedly pursued those claims, having been dismissed and gone through three courts now, three federal courts. I'm out of time, Your Honor, unless there are some more questions. I want to defer to Mr. Ruesing for his part. Thank you. Please, the Court. Mick Ruesing here on behalf of TIA, CREF, and Apelli. To further answer the Court's last question regarding why the entire case was dismissed, the feeling that I got from the arguments and the rulings were that when Mr. Katz was given the instructions to re-plead the case so that it complied with the appellate decision back east, he failed to do so in a way that put together a cogent due process claim. And specifically, he didn't include any state actors. Because the court out there, the Sixth Circuit, had already decided that the attorneys were not state actors sufficient to support a due process claim. And if they're not, how can their client be? And what he should have done... Well, I think we're mixing and matching two different concepts here. There's a 1983-type action against somebody for personal liability. And for that, you have to be a state actor or sufficiently associated. And those claims are arguably gone. There's also a 14th Amendment due process claim that says, do not recognize the Arizona court judgment because it's void because of all the alleged improprieties. And in that kind of claim, I don't understand that the non-state defendants, the chalk or estate, for that matter, the stakeholders, including your client, they're not being named based on their personal wrongdoing. They're named because the judgment to be set aside affects them. Or, in this case with your client, your client holds the stake that is altered or is the subject matter of that Arizona court decision. And if that court decision is set aside, your stake is back in business. So it's not wrongdoing on the part of state actors. It's that the state judgment should be void. Right. But in that case, there's no one left in the case against whom that relief can be granted. What he should have done is named the state court. You don't get relief from the state. I don't think you can name the state court. But you don't get relief from them because it's TIA-CREF that has the money. Well, it would seem to me, if you're going to allege what is really intrinsic fraud, not extrinsic fraud, you're saying the court itself, the clerk of the court and the sitting judge somehow deprived this person of their due process rights. You do have to have a state actor to have a due process violation, and that's the state actor. They were the ones that, in my reading of the Sixth Circuit opinion, they directed him to bring into the case. That he had to go in. He calls it an in rem proceeding. And if you're going to have an in rem proceeding involving the actions of the state itself, the state needs to be a party to it. Do you point to me something in the Sixth Circuit opinion that says anything like that? I didn't say it. In the Sixth Circuit opinion, it says this is the only thing, a separate action, and the language is not 100% clear, but the way I read it was a separate action that involves the clerk of the Pima County Superior Court and those sorts of things. It can't be a separate action, because if the court said, look, you might have a separate action, that would have resulted in the complete dismissal by the Sixth Circuit of the case in front of them, because the Arizona court was not a party to that case. That's not the bottom line of the Sixth Circuit opinion. The Sixth Circuit said something survives in the case before them. That's the case before us. The piece that survives isn't a separate action. It's something in this case. What part is it? The way the court, in my view, depicted that is, the only thing that would survive were these alleged wrongdoings of the Pima County Superior Court that occurred after whatever it was, April of 1995. And those things were what was not alleged against these defendants, and that he didn't bring the state in. That can't be right, because the bottom line of the Sixth Circuit action was to reverse and remand for further proceedings, because the Sixth Circuit perceived that claim to be within this case. So how can you say it wasn't alleged, it's not part of this case? If that were true, the Sixth Circuit would have dismissed completely. Well, yeah, and I think that the Sixth Circuit missed a chance to put a stake through the heart of this case once and for all, and should have for that reason. But it still remains that the relief that, at least the way I read that Sixth Circuit opinion, the relief that they said might exist and the claim that might exist was not repled in the way that they suggested when it came back down. And because you still need, if you're going to have a due process violation in a due process case, you have to have state actors. If we're not the state actors, they have to bring the state actors in. So what? With all the cases we cited. All of your cases are 1983 action cases, damages under 1983. That's something different from a 14th Amendment due process claim that says this judgment should not be recognized. But 14th Amendment cases involve state action inherently. Well, that's not really hard to find here. It's the action of the Arizona Superior Court. And so they have to be brought in as the state actors. Why? Why? You've asserted that several times, and nobody's ever given them the authority to support that proposition. Because how are you going to alter, how are you going to adjudicate their actions and alter their rulings without having them as a party and be able to defend themselves, for starters? Because they don't lose as a result. The parties whose rights are affected are the parties that are defendants in this case, the trucker estate and the stakeholders. And those are the parties named as defendants. The Sixth Circuit didn't say this case dies because Arizona's not named as a defendant. That's the proposition you're trying to sell to me, but the Sixth Circuit didn't find that to be correct, and I don't find it to be correct either. Well, I found that inherent in the Sixth Circuit opinion. And why isn't the bottom line of the Sixth Circuit affirm the dismissal? Because I think the ---- Answer that one question. It seems to me that position is impossible to square with the fact that the bottom line of the Sixth Circuit is a word other than affirmed. I think that because that case was in its early stages, that the Sixth Circuit perceived that the case could be reconstructed to survive by the addition of those claims and those parties. That's how I read it. I'm going to go on, so I have 50 seconds left. I'm here on behalf of what everyone incorrectly refers to as a stakeholder. We are not a stakeholder. This case, my aspect of the case, was tried back in 1995 and 1996 as part of an order to show cause to enforce a quadro. It's undisputed that Mr. Katz received notice of that proceeding, and the quadro instructed TIA Kreft to turn over funds to Ms. Chalker. The court ruled in Ms. Chalker's favor, directed us to turn over those funds. We waited until the time for appeal had expired and some other injunction they'd obtained expired before we paid over those funds. And we had to pay them over or we would have been in contempt of court. We had no option. Those funds are gone. We are not a stakeholder. Our stake has been paid over to Ms. Chalker, and I don't know where it is. I don't know if the state has it. It's been distributed to the kids. I don't know if she lost it in the stock market or what. But that's why to classify TIA Kreft as a stakeholder is incorrect, and it's important on the issue of attorney's fees and why we should never have been in this case, and it's why they agreed to dismiss us way back when and then reneged on that agreement, which is one of the basis for the attorney's fees award in our favor. So regardless of what happens to the rest of the case, the dismissal of TIA Kreft should stand and the attorney's fees should be affirmed. Well, let me make sure I understand your position. I mean, frankly, what you say with regard to why TIA Kreft shouldn't be in the case makes perfect sense as a grounds for summary judgment. But the district court here granted dismissal, presumably on the legal theory doesn't fly, and I don't see anything in the district court's determination that relies upon the fact that your client doesn't have the money anymore and properly paid it out in response to a court order. So is that a ground that we can rely upon at this point? Well, because what the court did was said because of this decision, we don't need to rule on our then pending motion for summary judgment. So to me, that issue is before this court as a matter of law that that can be ruled upon, that we are not a stakeholder. So in the same way that Mr. Katz is trying to argue that we should rule upon his, I guess, motion for a preliminary injunction, which was not reached by the district court, you're telling us that we should reach your motion for summary judgment. Well, I disagree. If the dismissal is set aside. Well, I disagree. I don't recall the preliminary injunction ever being in front of this court. There's no notice of a hearing. There's nothing pled. There was no refiling of pleadings. And the court, as you recall, directed him to file these new amended complaints, and there was not anything filed with them to put the injunction back in play, because the last thing that happened, if he's referring to what I guess it was Judge Echols did back in Tennessee or Ohio or one of those states, was deny the TRO and dismissive preliminary injunction. So it was not in play. Let me recast it because it's a bad analogy. You're not trying to say that the district court ruled on the argument you're giving us with regard to how your clients paid the money out already. That was posed in a motion for summary judgment, which the district court didn't reach. If we decide the dismissal is inappropriate, it's your position that we can reach the issues raised by your motion for summary judgment. Correct. Thank you. I appreciate your argument. Mr. Katz, you have about six and a half minutes left. First, let me respond to the quadro. We attacked the constitutional validity of not only the final Arizona State Court judgment, but all derivative orders entered after that, the quadro. The quadro is to when we were before Chief Judge Echols in a three-day trial evidentiary hearing, the case had already started with a temporary restraining order. They released this money prematurely. The purpose of bringing them in like fidelity was simply for interpleader. There's a string of cases where TIA interpleads funds where there's a husband-wife dispute. Mr. Katz, let me stop you for a second. Except for the moment that, and this is hypothetical for the purpose of this question, assume we go with your argument and set aside the dismissal. Is there a reason that we cannot reach the insurance company or TIA Cref's motion for summary judgment based on the premise that they respond to what appeared to be on its face a lawful court order? They're allowed to do that if they paid the money out and don't have any money left anymore. What basis is there to keep them in the case? Well, Your Honor, first of all, they let the money go. They didn't interplead it like fidelity in Waterhouse. They let it go willfully, and what they did is- Stop! Stop! Stop! Stop! Stop! Stop! I'm sorry, Your Honor. I appreciate the fact that you're out of the country and we're doing this by telephone, but I've got- Oh, I'm sorry. I'm going to pin you down. I don't want to waste your time on other things. Thank you. The argument they presented to us is that they had a lawful court order saying pay out the money. Now, the fact that it may have been secured by fraud, void, something years later, is not something they can be expected to anticipate. You get a court order, you're supposed to follow it. What's wrong with them paying the money out? What I'm trying to explain is that the federal case, the money, they were sued along with Fidelity, the stakeholders, and the federal court enjoined them. There was a temporary restraining order. They let the money go. They didn't interplead it. They let it go, and there was a stay order. They let the case go. They transferred the money as quick as it was a hot potato. The remedy was interpleader. That's all we ever requested, or sit by the sidelines. Fidelity never let the money go. It's frozen now. Waterhouse is frozen. But my client, Fidelity, 20 years ago, gave them, let go of the money because they didn't want to be bothered. Well, they had interpleader, and there's lots of case law, blah, blah, blah, versus TIA-CREF, interpleader cases that are cited in the brief and below. So, no, they're not out of this case because they've got to make restitution if they made a bad decision. That's what interpleader is for. They chose to pass it, so now they have liability here, Your Honor, and RUSA doesn't give them any protection on this one. And with federal case law, TIA-CREF up the kazoo because, as you know, it's a major retirement asset for faculty members. One final thing I would like to say, that there's some collateral consequences to this case. Well, regarding attorney's fees, what this argument has established from the other side in the question of the court is they can't have attorney's fees under any circumstances because this case isn't frivolous. We file an amended complaint after the Sixth Circuit suggested we do so on petition for claims that we weren't aware of, like claims arising under Dennis v. Sparks, the partnership, all that. And we did. And when we amended our complaints for damages, we only pled those claims on matters that we discovered after April 10th. And there was no response to the pleadings. The court granted us leave to amend, but the point is that the issues weren't even joined. So under classic Supreme Court case law, we would have been entitled to amend the claim. And so we now have but seven claims that the court dismissed. And finally, the plaintiffs, Jason Katz and Sean Katz, are not barred by any preclusive claims because the court was referring to a lawsuit that I had brought. They had never brought a damage action until they filed in the Middle District of Tennessee. The court was referring to my original action in the Northern District of Ohio. So they're not barred by anything, but we still only pled things that occurred after April 10th. But the judgment as applied to them is void for lack of personal jurisdiction, malign. And why it takes 15 years to get a malign decision and no response to pleading is a mystery to me. One final point. I'm a member of the bar of this court. And in order for that state court judge to have declared that judgment void in Ohio, it declared that I committed fraud while an officer of the Ohio Supreme Court, the District of Columbia, barred myriad of federal courts, including the Ninth Circuit. If this court sustains this affirmance, it has an obligation to refer me under Rule 46 to your grievance committee because you have an officer of the court standing before you. Do you now have a full and full record that I may have committed disparable offenses? And I want that hearing. I have never had a hearing to explain what happened to me. I mean, it has impaired my license, my ability to apply to other states because of national conference investigations go on for years. I've had 38 years of distinguished service. I want a hearing from somebody as untasteful and as inconvenient as these facts are. And for that, I ask the court, thank you for granting me leave to do my oral argument by telephone under the circumstances that I was facing. I have nothing further to say. We thank all of you for your argument in this most unusual case. The case is submitted for decision, and we will move to the next case on this morning's calendar. There is one case on the calendar that is submitted on the brief, the Lee case. The next case to be argued is United States v. Rosales Hernandez. I don't know if you have to do anything to end the telephone connection, or is that taken care of?
judges: Nelson D. W., Clifton, King